IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| FORREST SCOTT SMART, | Cause No. CV 24-20-BLG-DWM |
| Petitioner, | |
| vs. | ORDER |
| WARDEN JIM SALMONSEN, MONTANA ATTORNEY GENERAL, | |
| Respondents. | |

On February 11, 2024, state pro se petitioner Forrest Scott Smart ("Smart") filed an application under 28 U.S.C. § 2254 seeking habeas corpus relief. (Doc. 1 at 7.) *See, Houston v. Lack*, 487 U.S. 266 (1988)(under the "prison mailbox rule" a prisoner's petition is deemed filed when it is handed over to prison authorities for mailing to the district court). Smart was directed to show cause as to why this matter should not be dismissed as time-barred and procedurally defaulted. (Doc. 4.) In his response to the order, Smart suggested he was abandoned by counsel and was experiencing ongoing medical issues. *See*, (Doc. 5 at 2-5.) Out of an abundance of caution, counsel was appointed to represent Smart. (Doc. 7.)

Counsel sought a stay of these proceedings on Smart's behalf in order to attempt to exhaust Smart's claims in the state court. (Doc. 10.) The motion was

1

granted. (Doc. 11.) The stay was later lifted, and counsel filed an amended Section 2254 petition on Smart's behalf. (Doc. 17.) The State was ordered to answer. (Doc. 18.) The State complied and Smart replied. (Docs. 21 & 22.) The matter is ripe for adjudication.

A threshold issue for the Court is whether these proceedings are time-barred by the applicable statute of limitations. The time-bar issue is to be resolved before considering other procedural issues or the merits of any habeas claim. *See, White v. Klitzkie*, 281 F. 3d 920, 921-22 (9th Cir. 2022). For the reasons explained herein, the Court finds the petition is untimely and dismisses the action.

## I.    Legal Standards

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a one-year limitations period applies to petitions filed by state prisoners under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2244. The limitation period shall run from latest of-

(A) the date on which the underlying judgment became final through either the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which any impediment to the filing of a federal petition created by unconstitutional state action is removed;
(C) the date on which a newly recognized and retroactively applicable constitutional right was first recognized by the United States Supreme Court; or
(D) the date on which the factual predicate underlying a claim could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

2

If the judgment is appealed, then it becomes final when the Supreme Court of the United States denies a petition for a writ of certiorari. *Jiminez v. Quarterman*, 555 U.S. 113, 119-20 (2009). *See also*, Sup. Ct. R. 13(1).

Any time spent pursuing a properly filed application for state post-conviction review or other collateral review does not count toward this one-year limitation period. 28 U.S.C. §2244(d). The period of limitation resumes when the post-conviction judgment becomes final upon issuance of the remittitur. *Jefferson v. Budge,* 419 F. 3d 1013, 1015 n. 2 (9th Cir. 2005). This tolling does not include time spent in certiorari proceedings before the Supreme Court of the United States after conclusion of state post-conviction review. *Lawrence v. Florida*, 549 U.S. 327, 331-36 (2007).

## II.   Background

The procedural history of Smart's state proceedings has been set forth in prior orders; it will be briefly summarized.

In 2007, Smart was convicted of two counts of Sexual Intercourse without Consent and was sentenced to the Montana State Prison for two concurrent twenty-year terms, with ten years suspended on each. Smart appealed. The Montana Supreme Court affirmed polygraph testing conditions but reversed the imposition of alcohol conditions to Smart's sentence. *State v. Smart*, 2009 MT 1, ¶ 17, 348 Mont. 274, 201 P. 3d 123. The Montana Supreme Court later affirmed the district

court's denial of Smart's petition for post-conviction relief. *Smart v. State*, No. DA 12-0480, 2013 MT 224N, ¶¶ 9-10.

In 2020, the State filed a petition to revoke Smart's sentence, based, in part, upon his failure to complete treatment. Following a hearing, the district court found Smart to be in violation of the conditions of his sentence and revoked it, imposing two concurrent ten-year prison sentences, with credit for street time from April 16, 2016, to March 25, 2020. *See, Smart v. Salmonsen*, OP 23-0172, Or. at *1 (Mont. March 28, 2023.)[1]

Smart did not file a direct appeal from his revocation sentence. (Doc. 1 at 2.) In March of 2023, however, he did file a petition for writ of habeas corpus in the Montana Supreme Court. There he argued that he did not violate the conditions of his sentence. The Court denied Smart relief, finding that he was precluded under state law from challenging a revocation sentence via the remedy of habeas corpus. *Id.* at *1-2 (citing Mont. Code Ann. § 46-22-101(2)). The Court also found Smart could not demonstrate that he received a facially invalid sentence; the petition was denied and dismissed.

Following entry of the stay in the instant matter, Smart's counsel attempted to file a petition for an out-of-time appeal in the Montana Supreme Court. *See,*

---

[1] A copy of this Order is attached to Smart's amended petition. *See,* (Doc. 17-2).

4

*State v. Smart*, No. DA 24-0765, Or. at *1 (Mont. Jan. 14, 2025).[2]  There Smart

alleged that he told his attorney at the revocation hearing to file an appeal and

repeated the request "for some time." *Id.*  Smart stated that he did attempt to file a

pro se notice and motion in the district court, but they went unanswered.  Smart did

not advise the Court whether or not he attempted to file an appeal on his own

behalf in the Supreme Court and noted that he had done so previously when he

appealed the denial of is petition for postconviction relief.  *Id.* at *1-2, *referencing*

*Smart v. State*, No. DA 12-0480 (Mont. Aug 13, 2013).  The Court also noted that

Smart represented himself in filing the petition for writ of habeas corpus the prior

year.  *Id.* at *2.  The Court denied Smart's request for an out-of-time appeal

finding that he had not demonstrated extraordinary circumstances and that denial

of the request did not amount to a gross injustice.  *Id.* at *2-3.

As set forth above, on February 11, 2024, Smart filed his initial §2254

petition in this Court.

## III.    Timeliness of Federal Filing

On December 7, 2020, the state district court entered its order revoking

Smart's sentence. *See e.g.*, (Doc. 17-8 at 2.)  Smart did not timely file a direct

appeal, although under state law he had 60 days within which to do so.  *See,*

M.R.A.P. 4(b)(1).  Thus, pursuant to 28 U.S.C. § 2244(d)(1)(A), Smart's

---

[2] A copy of this Order is attached to Smart's amended petition. *See*, (Doc. 17-1.)

5

conviction became final on Friday, February 5, 2021.  The one-year limitations period commenced on Monday February 8, 2021,[3] and expired one year later, absent applicable periods of tolling.  *See Patterson v. Stewart*, 251 F. 3d 1243, 1245-47 (9th Cir. 2001)(the limitations period begins to run on the day after the triggering event pursuant to Fed. R. Civ. P. 6(a)).  Accordingly, Smart should have filed in this Court by Tuesday, February 8, 2022.  But Smart filed his federal petition on February 11, 2024, more than two years too late.

On March 16, 2023, Smart filed his pro se petition for habeas corpus relief in the Montana Supreme Court.[4]  Federal time is tolled while a state prisoner has a "properly filed application for State postconviction or other collateral review" pending in state court. 28 U.S.C. § 2244(d)(2).  The tolling provision of § 2244(d)(2) can only pause a clock if it has not yet fully run; it cannot "revive" the limitations period once it has expired (i.e., restart the clock to zero).  Thus, a state court petition for collateral review filed after the expiration of the statute of limitations does not toll the limitations period under § 2244(d)(2).  *See Ferguson v. Palmateer*, 321 F. 3d 820, 823 (9th Cir. 2003); *Jimenez v. Rice*, 276 F. 3d 478, 482 (9th Cir. 2001). Accordingly, Smart's state habeas petition, filed after the federal

---

[3] February 6, 2021 was a Saturday.  Smart will be given the benefit of the two extra days.
[4] *See*, Montana Supreme Court Docket: https://supremecourtdocket.mt.gov/case-info/closed/24533

limitations period had passed, does not serve to toll the limitations period. Thus, no statutory tolling applies.

## IV.    Analysis

In his reply, Smart suggests that he is entitled to equitable tolling to excuse his untimely filing, based on defense counsel's purported misconduct. *See*, (Doc. 22 at 8-17.) Smart contends that following his revocation hearing, he advised counsel he wished to appeal and repeated his request both in person and over the phone for the following week. (*Id.* at 8.) Smart contacted the Chief Public Defender and renewed his request. Smart then turned to the Office of the Appellate Defender who advised Smart that the Office could not represent him until a notice of appeal had been filed and an appointment was made. (*Id.* at 8-9.) Smart asserts that this conduct goes beyond excusable neglect and constitutes an "extraordinary circumstance." (*Id.* at 9-11.) Additionally, Smart contends he exercised reasonable diligence as evidenced by his actions in attempting to obtain assistance in filing an appeal. (*Id.* at 12-13.)

Respondents disagree, arguing that even if his state counsel failed to appeal his revocation sentence, the act does not constitute an extraordinary circumstance, nor does it excuse the failure to timely file in this Court. (Doc. 21 at 36-37.)

### Equitable Tolling

The Supreme Court has held that AEDPA's statute of limitations "is subject

7

to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). Equitable tolling is appropriate, however, only if (1) a petitioner has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *See, id.* at 649 (*quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). "[T]he threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F. 3d 1062, 1066 (9th Cir. 2002)(citation omitted). As a consequence, "equitable tolling is unavailable in most cases." *Miles v. Prunty*, 187 F. 3d 1104, 1107 (9th Cir. 1999).

To satisfy the first element, a petitioner "must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing." *Smith v. Davis*, 953 F. 3d 582, 598-99 (9th Cir. 2020)(en banc). It is not enough for a petitioner "to attempt diligently to remedy his extraordinary circumstances; when free from the extraordinary circumstance, he must also be diligent in actively pursuing his rights." *Id.* at 599. However, "the diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence'." *Id.* (*quoting Holland*, 560 U.S. at 653).

To satisfy the second element, a petitioner must show that the "extraordinary circumstances" were the cause of the untimeliness. *Grant v. Swarthout*, 862 F. 3d

8

914, 926 (9th Cir. 2017). In other words, "that some external force caused his untimeliness, rather than mere oversight, miscalculation or negligence." *Velasquez v. Kirkland*, 639 F. 3d 964, 969 (9th Cir. 2011).

"Equitable tolling may be warranted in instances of unprofessional attorney behavior; however, the AEDPA deadline will not be tolled for a garden variety claim of excusable attorney neglect or mistake." *Doe v Busby*, 661 F. 3d 1001, 1011-12 (9th Cir. 2011)(*citing Spitsyn v. Moore*, 345 F. 3d 796, 800-02 (9th Cir. 2003)). The attorney's misconduct must be "a *sufficiently egregious* misdeed like malfeasance or failing to fulfill a basic duty of client representation" to warrant equitable tolling. *Id.* at 1012 (*citing Spitsyn*, 345 F. 3d at 801). Trial counsel's failure to file a direct appeal is not an extraordinary circumstance warranting equitable tolling when counsel's alleged negligence has no causal connection to a petitioner's ability to file a timely federal habeas petition. *See, Randle v. Crawford*, 604 F. 3d 1047, 1058 (9th Cir. 2010).

As an initial matter, the Court is somewhat dubious of Smart's claim that trial counsel advised him that he "did not know how" to file an appeal, which is a perfunctory legal task. Moreover, it is somewhat incredible that Chief Defender Hood would have directed no action be taken once she learned that Smart had directed his appointed counsel to file an appeal and the request had fallen on deaf ears. But even accepting Smart at his word, he has not shown that it was counsel's

9

failure in his state proceeding that prevented Smart from timely filing his federal petition.

Smart has failed to establish a causal connection between counsel's action in state court and Smart's untimely filing in this Court.  Smart's situation is akin to *Randle v. Crawford*, 604 F. 3d 10047 (9th Cir. 2010).  There the Circuit determined that counsel's failure to file a timely notice of appeal from a state judgment of conviction "had little to no bearing on [petitioner's] ability to file a timely federal habeas petition.  Counsel's failure…simply meant that [petitioner] had one year from the expiration of his time to file a notice of appeal in which to initiate a federal habeas action- it did not prevent him from filing the petition" *Randle*, 604 F. 3d at 1058; *see also, United States v. Buckles*, 647 F. 3d 883, 890-91 (9th Cir. 2011)(finding that counsel's alleged misconduct did not entitle Buckles to equitable tolling because counsel's inaction had no effect on the timeliness of Buckle's §2255 motion).

Thus, even if this Court were to accept that state appointed counsel's failure to act constituted an extraordinary circumstance, Smart fails to show that he was reasonably diligent in pursuing his rights or that the extraordinary circumstance caused his untimeliness. *See, Lott v. Mueller*, 304 F.3d 918, 922-23 (9th Cir. 2002)(finding the district court must examine whether, notwithstanding the extraordinary circumstances, the petitioner could have filed a timely petition).

10

The record before the Court demonstrates that following his revocation hearing, Smart did not file a pro se notice of appeal. Smart does not contend that he was unable to or unaware of how to do so. Notably, in August of 2012, Smart filed a pro se notice of appeal to the Montana Supreme Court following the denial of his postconviction petition. *See*, (Doc. 21-16.) Thus, Smart was capable of filing a notice of appeal and cognizant of corresponding deadlines. But despite being aware of appointed counsel's purported inaction, Smart took no acts on his own behalf until he filed a motion for production of a hearing transcript in July of 2021, more than 7 months after his revocation hearing. *See*, ROA (Doc. 21-27 at 4.) Smart then waited another year and 7 months, until February of 2023, before he filed a motion to modify his sentence in the district court. (*Id.*) Neither of these filings support a finding of diligence or reasonably indicates that Smart intended to appeal his revocation sentence.

Additionally, Smart is a rather experienced pro se filer. As set forth above, in March of 2023, Smart filed a pro se petition for habeas corpus relief with the Montana Supreme Court. In this Court, aside from filing his initial 2254 petition pro se in the instant matter, Smart has also filed pro se post judgment motions in a prior criminal case. *See, United States v. Smart*, Cause No. CR-04-150-BLG-SPW (Docs. 79, 81 & 83). Smart has also filed two pro se civil rights actions. *See, Smart v, Kirkegard et al.*, Cause No. CV 15-87-H-DLC, Comp. (filed Oct. 9,

2015); *Smart v Winner et al.*, Cause No. CV-24-65-H-DLC, Comp. (filed Sept. 19, 2024). Thus, Smart was capable of filing on his own during the limitations period. There is no indication that appointed counsel's acts prevented him from doing so, nor does the record indicate that Smart exercised reasonable diligence during the corresponding time period. Thus, even if appointed counsel failed to file an appeal, equitable tolling is not warranted because the inaction had no effect on the timeliness of Smart's petition. A petitioner who fails to act diligently cannot invoke equitable principles to excuse his lack of diligence. *See, Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151 (1984).

In short, Smart filed his federal petition two years after the expiration of AEDPA's statute of limitations. Smart has failed to meet his burden of establishing entitlement to equitable tolling. Accordingly, the amended petition is dismissed with prejudice as untimely.

**Actual Innocence**

In a pro se filing lodged after his reply was filed, Smart contends that a miscarriage of justice has occurred in this matter because he is actually innocent. See, (Doc. 23.) Smart is represented by counsel and has not sought leave for hybrid representation. Nonetheless, Smart's filing has been reviewed and considered. In short, Smart contends that he did not violate the conditions of his probation because he probation officer and treatment provider did not meet and

agree that he needed to return to treatment. (*Id.* at 1-2.) He further argues that COVID-19 shut down treatment programs and he is unfairly being punished for the effects of a global pandemic. (*Id.*) Smart asserts his revocation was unlawful.

In the federal habeas context "actual innocence" means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). To make a credible claim of actual innocence, petitioner must produce "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324 (1995). The habeas court then considers all the evidence: old and new, incriminating and exculpatory, admissible at trial or not. *House*, 547 U.S. at 538. On this complete record, the court makes a "probabilistic determination about what reasonable, properly instructed" factfinder would do. *Id.* (quoting *Schlup*, 513 U.S. at 330).

As an initial observation, these are the same, if not similar, arguments that Smart advanced in the revocation proceeding and were rejected by the trial court. *See generally*, Trans. (Doc. 17-9.) Smart has not presented new evidence or information that would establish that he is actually innocent of the probation violation, aside from his own conclusory assertions of innocence. Smart's conjecture is not new reliable evidence that could not have been provided at the

13

time of his hearing. Accordingly, this is not the extraordinary case where Smart has presented compelling evidence of his actual innocence. *See, Schlup*, 513 U.S. at 321.

## V.    Conclusion

Respondents present additional arguments aside from untimeliness. They contend that Smart's claims are unexhausted and procedurally defaulted. *See,* (Doc. 21 at 38-45.) The Court will not address these arguments because the entire matter is being dismissed as untimely.

## VI.    Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing Section 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court

14

was correct in its procedural ruling." *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) (quoting *Slack*, 529 U.S. at 484).

Smart has not made a substantial showing that he was deprived of a constitutional right. Moreover, jurists of reason would not find it debatable that is petition is untimely. A certificate of appealability is denied.

Based on the foregoing, the Court enters the following:

## ORDER

1. Smart's Amended Petition (Doc. 17) is DISMISSED with prejudice as time barred.

2. The Clerk of Court is directed to enter a judgment of dismissal.

3. A certificate of appealability is DENIED.

DATED this 25th day of June, 2026.

 

 

Donald W. Molloy, District Judge
United States District Court

15